UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMES ESTRADA,

                 Plaintiff,

          -against-

ZACKARY DUGOW; REDRUSH ENTERTAINMENT
LLC; and INSTICATOR, INC.,

                 Defendants.

**OPINION AND ORDER**

15 Civ. 3189 (ER)

---

Ramos, D.J.:

James Estrada ("Plaintiff" or "Estrada") brings this action arising out of his alleged investment in RedRush Entertainment LLC ("RedRush"), a New York limited liability company founded and managed by Zackary Dugow ("Dugow"). Plaintiff makes claims for (1) breach of fiduciary duty, (2) fraudulent misrepresentation, (3) fraudulent conveyance, and (4) unjust enrichment. Plaintiff alleges that his relationship with Dugow was fiduciary in nature, and that Dugow breached his fiduciary duty to Plaintiff by, *inter alia*, using Plaintiff's invested funds to his own benefit and by failing to manage the business affairs of RedRush. Plaintiff further alleges that Dugow fraudulently induced Plaintiff to invest $150,000 in RedRush, which Dugow fraudulently conveyed to another company owned by him, Insticator, Inc. ("Insticator"), resulting in the unjust enrichment of Dugow and Insticator. Plaintiff seeks compensatory damages together with interest, costs, disbursements, and attorneys' fees, as well as declaratory relief confirming that Plaintiff is entitled to inspect and copy RedRush business records and that Dugow and RedRush must produce such records. Dugow, RedRush, and Insticator (collectively, "Defendants"), now move to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure. For the reasons set forth below, Defendants' motion to dismiss is DENIED in part and GRANTED in part.

## I. BACKGROUND[1]

### A. Factual Background

From June 2012 to September 2012, Plaintiff, a French national, interned for RedRush, an "event planning and venue promotions management company" in New York City. Compl. ¶¶ 9, 14, 16. During Plaintiff's internship, RedRush had no other employees and Plaintiff was personally supervised by Dugow, the sole owner and manager of the company. *Id.* ¶ 17. RedRush did not have its own office and was instead located on the premises of Insticator, a Delaware corporation also formed by Dugow, which produces an online advertising platform. *Id.* ¶¶ 15, 18. Upon the completion of his internship in September 2012, Plaintiff returned to France because his visa was due to expire. *Id.* ¶ 19.

On August 27, 2013, Plaintiff informed Dugow via email that he was interested in pursuing a career in the United States and inquired about the possibility of buying "units" of RedRush or shares of Insticator. *Id.* ¶ 20; Ex. 1.[2] Plaintiff also asked Dugow if he could become employed by the two companies and communicated to Dugow that he would be willing to pay for the requisite United States visa. Compl. ¶ 20. On August 28, 2013, Dugow responded that he would agree to let Plaintiff purchase units of RedRush, and could hire Plaintiff as an employee of the company and/or make Plaintiff his business partner. *Id.* ¶ 21. In the same communication, Dugow provided Plaintiff figures showing RedRush's revenues declining from

---

[1] The following facts are based on the allegations in the Complaint, Doc. 1, which the Court accepts as true for purposes of the instant motion. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). On a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, as well as documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference. *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 244 (S.D.N.Y. 2011) (citations omitted); *see also DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[2] All "Ex." references are to exhibits attached to the Declaration of James Estrada (Doc. 20).

2

$294,000 in 2011 to $176,000 in 2012. *Id.* Dugow explained that the reason for the decline was because he had been spending the majority of his time running his other company, Insticator. *Id.* ¶ 22. According to the allegations in the Complaint, Dugow did not disclose to Plaintiff that at that time and since at least December 2012, he considered RedRush to be defunct. *Id.*

On August 30, 2013, Dugow informed Plaintiff via email: "Ideally I would like to have you purchase 49% of [RedRush] for $148,000. *Id.* ¶ 23; Ex. 1. Plaintiff then asked Dugow via email on September 3, 2013 what the specifics of his employment with RedRush would be if Plaintiff purchased 25% of the company. Compl. ¶ 24; Ex. 1. On September 4, 2013, Dugow responded in an email:

> You would be Vice President of RedRush. You would be in charge of promotions and company growth. I would introduce you to lots of the different venues and you would come with me to meetings and learn how to operate sponsored events. As well as meet owners of different venues. You would promote and manage different promoters. I would teach you how to negotiate the deals and execute. As well as how to reach out to liquor companies for sponsorships and other entertainment value add for the company. You would use my contacts in the industry and database.

Compl. ¶ 25; Ex. 1.

In a later communication, Dugow also offered Plaintiff the position of "promoter of RedRush," which included "substantial annual compensation," and told Plaintiff that his investment in RedRush would allow the company to hire full-time employees, which in turn would lead to an increase in the company's client portfolio. Compl. ¶¶ 26, 27. When Plaintiff told Dugow that he needed to make sure that he would "have a revenue" in RedRush in order to obtain a visa, Dugow assured Plaintiff that he "will have revenue." Ex. 1.

Relying on the promises Dugow made, Plaintiff obtained $150,000 from his parents to invest in RedRush. Compl. ¶ 28. Accordingly, on November 30, 2013, Plaintiff and Dugow signed a Unit Purchase Agreement (the "Purchase Agreement"), subject to which Plaintiff agreed

3

to purchase from Dugow 50% of the common units of RedRush for $150,000, "represent[ing] 50% of the equity ownership of the Company." *Id.*; Defs.' Ex. B at 1.[3] According to the Purchase Agreement, Plaintiff acquired from Dugow common units in RedRush "solely for [Plaintiff's] own account for investment purposes only." Defs.' Ex. B ¶ 5. The Purchase Agreement also contained a buyer "put right" clause which provided that until April 30, 2014, Plaintiff could request the return of his $150,000 payment if his United States visa application was rejected. Compl. ¶ 32; Defs.' Ex. B ¶ 2.

That same day, Plaintiff and Dugow also signed a document entitled "Amended and Restated Limited Liability Company Agreement of RedRush Entertainment LLC" ("LLC Agreement"). Defs.' Ex. C. The LLC Agreement provided that "each Manager shall owe, and shall act in a manner consistent with, fiduciary duties to the Company and its Members of the nature, and to the same extent, as those owed by directors of a New York limited liability company." Compl. ¶¶ 28, 45; Defs.' Ex. C ¶ 5.1(c). Furthermore, the LLC Agreement stated that Dugow was RedRush's sole manager. Defs.' Ex. C ¶ 5.1(a). Plaintiff and Dugow both signed the Agreement as the LLC's only two members. *Id.* at 14.

Finally, on December 4, 2013, Plaintiff and Dugow signed a Promoter Agreement providing Estrada, as a promoter for RedRush, with an annual compensation equal to either (a) 50% of the company's net profits if such net profits equal or are greater than $125,000 or (b) 100% of the company's net profits if such net profits are less than $125,000. Compl. ¶ 29; Defs.' Ex. D ¶ 2. Both the Purchase Agreement and the LLC Agreement contained a merger clause indicating that the agreement constituted the entire agreement between the parties. Defs.' Ex. B ¶ 11; Defs.' Ex. C ¶ 10.4.

---

[3] All "Defs.' Ex." references are to exhibits attached to the Declaration of Zackary Dugow in Support of Motion to Dismiss (Doc. 17).

In compliance with the Purchase Agreement, Plaintiff transferred $150,000 from his personal bank account to the New York bank account of RedRush on January 29, 2014. Compl. ¶ 30. Even though Plaintiff acquired a 50% interest in RedRush as a result of his $150,000 investment, Dugow remained the sole manager of RedRush and retained full control of the company. *Id.* ¶ 31.

In the two months following Plaintiff's investment in RedRush, Plaintiff alleges that Dugow used the $150,000 for his exclusive benefit and to the benefit of his other company, Insticator. *Id.* ¶ 33. Specifically, on April 1, 2014, RedRush's bank account balance was $4,328 and by April 30, 2014, the balance had further decreased to $17. *Id.* ¶ 34. RedRush's account was eventually closed in November 2014. *Id.* In addition to Dugow's alleged misappropriation of the entirety of the funds Plaintiff invested in RedRush, Plaintiff further alleges that Dugow failed to provide any corporate documents to Plaintiff and did not inform Plaintiff of "the existence, purpose, and destination of any of the [monetary] transfers that originated from RedRush." *Id.* ¶ 35.

One month after investing in RedRush, Plaintiff requested a videoconference with Dugow and inquired about the financial health of the company. *Id.* ¶ 36. Dugow represented to Plaintiff that RedRush "was doing very well," but did not provide Plaintiff any documents attesting to the financial health of the company. *Id.* Dugow instead showed Plaintiff a large sum of cash in a safe and claimed that the cash was RedRush's money. *Id.* In a subsequent phone conversation in either late February or early March 2014, Dugow told Plaintiff that Plaintiff's $150,000 investment was no longer Plaintiff's money, because Plaintiff had purchased the units of RedRush directly from Dugow. *Id.* ¶ 37.

Plaintiff's first visa application was rejected in March 2014. *Id.* ¶ 38. Plaintiff does not dispute that he did not avail himself of the buyer put right provision in the Purchase Agreement and demand return of his investment by April 30, 2014. *See* Pl.'s Opp. Mem, Doc. 21, at 8. Plaintiff applied for a visa a second time, but was again denied a visa in July 2014. Compl. ¶ 38. On July 24, 2014, Plaintiff then wrote to Dugow to demand the return of his $150,000 investment in RedRush, but Dugow did not respond to Plaintiff's request. *Id.* ¶ 39.

In an attempt to recover Plaintiff's investment, Plaintiff's attorney wrote to both Dugow and RedRush on December 23, 2014, January 28, 2015, and February 13, 2015. *Id.* ¶ 40. These letters sought an accounting of Plaintiff's invested funds and requested that Plaintiff be permitted to inspect RedRush's records as required under N.Y. LLC Law § 1102. *Id.* Dugow has acknowledged his receipt of Plaintiff's three letters but has refused to reimburse any funds to Plaintiff and has ignored Plaintiff's accounting and record inspection requests. *Id.* ¶ 42.

**B. Procedural Background**

Plaintiff filed the instant action on April 23, 2015, and makes five claims: (1) Dugow breached the fiduciary duties he owed to Plaintiff by, *inter alia*, using the totality of the funds Plaintiff invested to his own benefit, failing to manage the business affairs of RedRush, and failing to provide Plaintiff with RedRush business records; (2) Dugow fraudulently made false statements, with the intention that the statements would induce Plaintiff to invest the largest possible sum of money in RedRush; (3) Dugow caused RedRush to transfer funds, including some or all of Plaintiff's investment, from RedRush to Insticator, which Plaintiff alleges constitutes a fraudulent conveyance under Section 276 of the New York Uniform Fraudulent Conveyance Act; (4) the fraudulent transfer of Plaintiff's investment in RedRush to Dugow and Insticator unjustly enriched both parties in the amount of $150,000; and (5) Plaintiff requests that

6

the Court enter a judgment declaring that Plaintiff is entitled to inspect and copy specific RedRush business records under N.Y. LLC Law § 1102(b), and seeks an order directing Dugow to produce such documents and to reimburse Estrada for legal fees and other costs incurred by him in pursuing his rights under N.Y. LLC Law § 1102(b). Compl. ¶¶ 9–17.

On July 24, 2015, Defendants filed a motion to dismiss the Complaint. Doc. 16. Defendants argue that Plaintiff's breach of fiduciary duty, fraudulent conveyance, and unjust enrichment claims must fail because the transaction between the Parties was not an investment, but a private purchase between two individuals. Defs.' Mem., Doc. 18, at 5–7. Defendants further argue that Plaintiff's tort claims do not lie because they are duplicative of breach of contract claims. *Id.* at 8–9. Finally, Defendants move to dismiss Plaintiff's request for declaratory judgment, because upon dismissal of the other counts, there would no longer be a matter in controversy exceeding $75,000 as required under 28 U.S.C. § 1332(a) for the Court to hear this case. *Id.* at 9.

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). The issue at this stage is therefore "not whether a Plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982). A Plaintiff must make sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

### A. Breach of Fiduciary Duty

Plaintiff alleges that Dugow breached a fiduciary duty owed to Plaintiff, by, among other things, using the funds Plaintiff invested in RedRush to his own benefit, failing to provide Plaintiff with records, and failing to manage the business and affairs of RedRush. Compl. ¶ 46. Dugow argues that Plaintiff's breach of fiduciary duty claim must be dismissed because the Parties' relationship was not fiduciary in nature, and thus, there was no breach. Defs.' Mem. at 6. Specifically, Dugow maintains that because Plaintiff merely purchased units of RedRush from Dugow individually, as opposed to purchasing "outstanding treasury shares in [RedRush]," Plaintiff did not invest in the company and was owed no fiduciary duty by Dugow. *Id.* at 6–7.

Under New York law, a breach of fiduciary duty claim requires the existence of a fiduciary relationship and a breach of that duty. *Muller-Paisner v. TIAA*, 289 Fed. Appx. 461, 465 (2d Cir. 2008). "[I]n order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *Poon v. Roomorama, LLC*, No. 09 Civ. 3224 (RMB), 2009 WL 3762115, at *3 (S.D.N.Y. Nov. 10, 2009) (quoting *World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*, 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007)).

"[I]t is well-settled law that a conventional business relationship does not create a fiduciary relationship in the absence of additional factors." *Stadt v. Fox News Network LLC*, 719 F. Supp. 2d 312, 319 (S.D.N.Y. 2010) (internal quotation marks omitted). A fiduciary relationship can arise, however, "where the parties to a contract specifically agree to such a relationship . . . ." *Pension Committee of University of Montreal Pension Plan v. Banc of*

8

*America Securities, LLC*, 592 F. Supp. 2d 608, 624 (S.D.N.Y. 2009); *see also Calvin Klein Trademark Trust v. Wachner*, 123 F. Supp. 2d 731, 733–34 (S.D.N.Y. 2000) (parties to a commercial contract "do not ordinarily bear a fiduciary relationship to one another *unless they specifically so agree*.") (emphasis added).

The LLC Agreement explicitly provides "that each Manager shall owe, and shall act in a manner consistent with, fiduciary duties to the Company and its Members of the nature, and to the same extent, as those owed by directors of a New York limited liability company."[4] Compl. ¶ 45; Defs.' Ex. C ¶ 5.1(c). Furthermore, Dugow and Plaintiff signed the LLC Agreement as the LLC's only two members, and the Agreement indicates that Dugow is RedRush's sole manager. Defs.' Ex. C at 14, ¶ 5.1(c). Thus, the parties expressly agreed that Dugow, as the LLC's sole manager, owed a fiduciary duty to Plaintiff, as a member of RedRush. Compl. ¶ 45; Defs.' Ex. C at 6, 14.[5]

The Court must next determine whether Plaintiff has adequately pled that Dugow breached that duty. Plaintiff alleges that Dugow failed to manage RedRush's business affairs

---

[4] Under New York's Limited Liability Company Law, "[a] manager shall perform his or her duties as a manager, including his or her duties as a member of any class of managers, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances." N.Y. LLC Law § 409(a).

[5] Defendants argue that all of the tort claims asserted by Plaintiff, including his breach of fiduciary duty claim, must dismissed as "merely duplicative of breach of contract claims that may be asserted." Defs.' Rep. Mem. at 5. Typically, "where a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract and must be dismissed." *Northern Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) (quoting *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publ'g Co.*, 580 F. Supp. 2d 285, 294–95 (S.D.N.Y. 2008) (internal quotation marks omitted)); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing Inc.*, 837 F. Supp. 2d 162, 196 (S.D.N.Y. 2011) ("In New York, a cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand.") (citation omitted). However, "the rule barring duplicative claims of breach of fiduciary duty and breach of contract is only applicable where the two claims are asserted against a common defendant." *Schwartzco Enterprises LLC v. THM Management, LLC*, 60 F. Supp. 3d 331, 353 (E.D.N.Y. 2014) (citing *Sun Products Corp. v. Bruch*, No. 10 Civ. 4816 (SAS), 2011 WL 5120307, at *5 (S.D.N.Y. Oct. 28, 2011) ("The rule barring duplicative claims of fraud and breach of contract is only applicable where the two claims are asserted against a common defendant"), *aff'd*, 507 Fed. Appx. 46 (2d Cir. 2013)). Thus, where, as here, a breach of contract claim is not asserted against Dugow, the breach of fiduciary duty claim asserted against him cannot be dismissed as duplicative of a breach of contract claim.

and did not disclose that he considered RedRush defunct.  Compl. ¶¶ 22.  In support of this contention, Plaintiff alleges that Dugow dissipated the assets of RedRush. *Id.* ¶ 34.  Specifically, Plaintiff asserts that as late as February 2014, Dugow told him that RedRush "was doing very well," but that by April 1, 2014, RedRush's bank account balance was $4,328.  *Id.*  By April 30, 2014, the balance had decreased to $17, and in November 2014, RedRush's account was closed. *Id.*  Plaintiff further alleges that Dugow failed to provide him with necessary records, and did not inform Plaintiff of "the existence, purpose, and destination of any of the [monetary] transfers that originated from RedRush."[6] *Id.* ¶ 35.  These allegations are sufficient to make out a claim for breach of fiduciary duty.  *See Soley v. Wasserman*, 823 F. Supp. 2d 221, 233–34 (S.D.N.Y. 2011) (breach of fiduciary duty sufficiently alleged where defendant, among other things, failed to provide records requested by plaintiff, failed to deal with plaintiff honestly, and knowingly provided plaintiff with misleading information regarding her financial affairs); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 204–05 (S.D.N.Y. 2008) (LLC member sufficiently alleged that managing co-member breached fiduciary duty to him by abandoning the company and diverting its resources to another company).  Moreover, these allegations suggest that Dugow was engaged in self-dealing, which is defined as "[p]articipation in a transaction that benefits oneself instead of another who is owed a fiduciary duty."  *Self-Dealing*, Black's Law Dictionary (10th ed. 2014).  Self-dealing also constitutes a breach under the well-established law of fiduciaries.  *See Birnbaum v. Birnbaum*, 539 N.E.2d 574, 576 (N.Y. 1989) (stating that the law of fiduciaries "bar[s] not only blatant self-dealing, but also require[es] avoidance of situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty");

---

[6] Plaintiff also claims that Dugow's use of "the totality of the funds invested by [Plaintiff] to his own and direct benefit and that of defendant Insticator and to the detriment of [Plaintiff] and RedRush" amounted to a breach of the fiduciary duties he owed Plaintiff.  Compl. ¶ 46.  However, for the reasoning discussed in Section III.C, *infra*, the Court finds that the $150,000 spent by Plaintiff for 50% of the common units of RedRush were not an "investment" in the company.

*Soley*, 23 F. Supp. 2d at 233–34 (breach of fiduciary duty claim sufficiently alleged where defendant, among other things, engaged in self-dealing by failing to disclose material information regarding investments); *Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 245 (S.D.N.Y. 1996) (plaintiff sufficiently alleged that defendant breached fiduciary duty to plaintiff by "self-dealing" and "converting trust assets").

Plaintiff has thus pled sufficient facts to indicate a breach of fiduciary duty. Dismissal of Plaintiff's first claim is therefore denied.

**B. Fraudulent Misrepresentation**

In his second cause of action, Plaintiff alleges that Dugow, as sole manager of RedRush, made false statements, misrepresentations, and omissions of material fact with the intent to fraudulently induce Plaintiff to invest "the largest possible sum of money in RedRush." Compl. ¶¶ 49–50. Defendant argues that Plaintiff's fraudulent inducement claim is duplicative of a breach of contract claim, and therefore that the merger clauses contained in the Unit Purchase Agreement and LLC Agreement preclude consideration of the extrinsic "alleged oral or email promises" underlying Plaintiff's claim. Defs.' Mem. at 8. The Court finds that Plaintiff has adequately pled a fraudulent inducement claim.

To prevail on a fraud claim under New York law a plaintiff must show "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19 (2d Cir. 1996).

"As the New York Court of Appeals has cautioned, '[t]he elements of fraud are narrowly defined,' and '[n]ot every misrepresentation or omission rises to the level of fraud.'" *Herzfeld v.*

*JPMorgan Chase Bank, N.A.*, 354 Fed. Appx. 488, 489 (2d Cir. 2009) (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 607 (N.Y. 1999)). A fraud claim cannot be an "attempt to dress up a contract claim in a fraud suit of clothes." *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 747 (2d Cir. 1979) ("*Triangle*"). This rule exists in part to prevent parties from avoiding the statute of frauds by disguising their contract claims as torts. *See Lehman v. Dow Jones & Co.*, 783 F.2d 285, 294 (2d Cir. 1986) ("[A] plaintiff may not circumvent the Statute of Frauds … by simply recasting his claim for breach of contract as an action for fraud.") (internal quotation marks omitted).

Accordingly, to maintain a claim of fraudulent inducement, a plaintiff must either: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone*, 98 F.3d at 20 (citations omitted). Such a claim may therefore be successfully "premised on misrepresentations [of material fact] that were made *before* the formation of the contract and that induced the plaintiff to enter the contract." *Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) (emphasis added) (citing *Triangle*, 604 F.2d at 746–47). If a person's promise to take some future action is collateral to the terms of the contract itself, it can be considered a misrepresentation for the purposes of a fraudulent inducement claim. *See Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc.*, 502 N.E.2d 1003, 1004 (N.Y. 1986) (finding that "a promise [not contained in the written agreement] made with a preconceived and undisclosed intention of not performing it . . . constitutes a misrepresentation" for purposes of a fraud in the inducement cause of action).

This case does not involve an attempt to dress up a contract claim as fraud.  Plaintiff has alleged that the fraudulent inducement consisted of misrepresentations that were made before any contracts were signed between the parties, and which were collateral to the contracts' terms. On September 4, 2013, Plaintiff asked Dugow in an email what his role at RedRush would be if he were to invest in the company.  Ex. 1.  The same day, Dugow told Plaintiff that he would, among other things, work as Vice President of RedRush, be in charge of promotions, and benefit from Dugow's knowledge and professional connections.  *Id.*  Furthermore, Plaintiff informed Dugow that he had an appointment in approximately a week to apply for his United States visa, and he wanted to be sure that he would "have a revenue" in RedRush.  *Id.*  Dugow assured Plaintiff: "Yes you will have revenue." *Id.*  Dugow also showed Plaintiff figures indicating that RedRush had approximately $295,000 in revenue in 2011 and approximately $176,000 in revenue in 2012.  *Id.*  Although Dugow allegedly considered RedRush to be defunct, he claimed that the reason the company's revenue had decreased was because he had been spending the majority of his time running another company.  Compl. ¶ 22.

With the exception of the promise of making Estrada a promoter, which was contained in the Promoter Agreement, the representations Dugow made to Estrada were collateral to representations made in the Purchase Agreement, LLC Agreement, and Promoter Agreement (collectively the "Agreements").  Furthermore, Plaintiff's assertion that these representations were material to his decision to invest in RedRush is plausible, given that it was only after Plaintiff expressed concern about his potential role at RedRush that these misrepresentations were made and Plaintiff agreed invest in the company.  The Court also finds that Plaintiff's reliance was reasonable given that these representations were made by an experienced

13

entrepreneur who had founded and managed multiple businesses, including in the event planning industry, and with whom Plaintiff had worked closely for four months in the summer of 2012.

Indeed, courts have found similar misrepresentations sufficient to support a fraudulent inducement claim in circumstances parallel to those alleged here. For example, in *Aguirre v. Best Care Agency, Inc.*, a court determined the complaint raised an issue of fact as to whether defendants made materially false representations to a foreign national plaintiff regarding defendants' financial capacity to sponsor plaintiff for her green card, which was "central to her decision to begin working and to continue working for defendants." 961 F. Supp. 2d 427, 449–450 (E.D.N.Y. 2013). In that case, the court noted that each time the plaintiff asked the defendants if they had the financial means to sponsor her visa, defendants told her she "did not have to worry" as defendants' company "earned around one million last year" and "[has] been earning more than a million for several years now." *Id.* at 449. Furthermore, in *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, the Second Circuit held that the district court erred in dismissing a fraudulent inducement claim that was premised on defendant's misrepresentations concerning, among other things, the financial health of its subsidiary which plaintiff was interested in acquiring. 500 F.3d 171, 181, 184 (2d Cir. 2007). Specifically, the Circuit reasoned that this false financial information constituted a misstatement of present fact separate and apart from the purchase agreement and, therefore, plaintiff was entitled to bring a claim for fraudulent inducement. *Id.* at 184.

Thus, the Court finds that Plaintiff's factual allegations plausibly suggest that Dugow fraudulently induced Plaintiff to enter into the Agreements. Consequently, Defendants' motion to dismiss Plaintiff's fraudulent misrepresentation claim is denied.

## C. Fraudulent Conveyance

In his third cause of action, Plaintiff alleges that Dugow caused RedRush to transfer RedRush assets to Insticator between January 29 and March 31, 2014 for no consideration, with "the actual intent to hinder, delay and defraud creditors of RedRush," including Plaintiff. Compl. ¶¶ 57, 59. Plaintiff claims that this transfer of RedRush funds to Insticator amounts to a fraudulent conveyance under Section 276 of the New York Debtor and Creditor Law ("DCL"). *Id.* ¶ 63. Defendants argue that Plaintiff's claims must fail because Plaintiff merely purchased RedRush shares from Dugow personally, and did not "purchase outstanding treasury shares in the company, which, by comparison, would have benefitted the company." Defs.' Mem. at 6–7. Therefore, Defendants contend, Plaintiff can make no claim that Dugow mishandled the proceeds of the sale. Defs.' Mem. at 7.

The Court agrees with Defendants. The Purchase Agreement governing the sale of RedRush shares explicitly states that Plaintiff purchased 50% of the common units of RedRush from Dugow. Compl. ¶ 31; Defs.' Ex. B at 1. Plaintiff and Dugow are the only parties to the Purchase Agreement, which refers to Dugow as "the Seller" and Plaintiff as "the Buyer," and provides that "[b]uyer shall pay seller $150,000 for 500,000 Common Units of the Company currently held by Seller." Defs.' Ex. B at 1. Thus the contract clearly indicates that this was a private sale of equity owned by Dugow, and in no way suggests that the purchase was a capital contribution to Redrush. Consequently, Dugow was entitled to use the proceeds from the sale however he saw fit. Defendant's fraudulent conveyance claim must therefore be dismissed to the extent that it is premised on the ground that the proceeds did not belong to Dugow, but to RedRush.

### D. Unjust Enrichment

In his fourth cause of action, Plaintiff alleges that as a result of the fraudulent conveyance discussed above, Dugow and Insticator unjustly enriched themselves in the amount of $150,000. Compl. ¶¶ 68. Because Plaintiff has failed to make a claim for fraudulent conveyance, Defendants' motion to dismiss the unjust enrichment claim is granted.

### E. Declaratory Judgment

In his final count, Plaintiff requests that the Court enter a judgment declaring that Estrada is entitled to RedRush records under N.Y. LLC Law § 1102(b), directing Dugow and RedRush to produce documents, and directing Dugow to reimburse Plaintiff for legal fees and expenses incurred in pursuing his rights under the N.Y. LLC Law. *Id.* ¶ 78. Defendants move to dismiss Plaintiff's request for declaratory judgment, arguing that if the four other counts in Plaintiff's Complaint are dismissed, Plaintiff would not be able to recover sufficient damages to invoke federal jurisdiction as required under 28 U.S.C. § 1332(a). Defs.' Mem. at 9.

As detailed above, only Plaintiff's fraudulent conveyance claim and unjust enrichment claim warrant dismissal. Accordingly, the matter in controversy exceeds the statutory minimum of $75,000, exclusive of interests and costs. Furthermore, as a member of an LLC that is governed by N.Y. LLC Law § 1102(b),[7] Plaintiff pleads facts amply sufficient to entitle him to accounting and inspection of RedRush corporate records. Defendants make no attempt to contest Plaintiff's right to access these records. To the contrary, they offer as an exhibit the LLC

---

[7] Under Section 1102(b) of the N.Y. LLC Law, any LLC member may:

> subject to reasonable standards as may be set forth in, or pursuant to, the operating agreement, inspect and copy at his or her own expense, for any purpose reasonably related to the member's interest as a member, the records referred to in subdivision (a) of this section, any financial statements maintained by the limited liability company for the three most recent fiscal years and other information regarding the affairs of the limited liability company as is just and reasonable.

N.Y. LLC Law § 1102(b).

Agreement which explicitly establishes that Plaintiff and Dugow are sole members of a company that was formed "as a New York limited liability company pursuant to the New York Limited Liability Company Law." Defs.' Ex. C at 1. Defendants Motion to Dismiss Plaintiff's final cause of action is thus denied.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendants' motion to dismiss with respect to Plaintiffs' claims for fraudulent conveyance and unjust enrichment, without prejudice, and DENIES Defendants' motion to dismiss with respect to Plaintiffs' claims for breach of fiduciary duty, fraudulent inducement, and declaratory relief. The parties are directed to submit a joint proposed discovery schedule by April 19, 2016, on the form provided at nysd.uscourts.gov/judge/Ramos. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 16.

It is SO ORDERED.

Dated:   March 31, 2016
         New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J.