UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC # _____
DATE FILED:  11/30/2016
```

JAMES ESTRADA,

                              Plaintiff,

              - against -

ZACKARY DUGOW,

                              Defendant.

**OPINION AND ORDER**

15 Civ. 3189 (ER)

Ramos, D.J.:

        James Estrada ("Plaintiff") brings this action arising out of his alleged investment in

RedRush Entertainment LLC ("RedRush"), a New York limited liability company founded and

managed by Zackary Dugow ("Defendant").  Plaintiff alleges that Defendant breached his

fiduciary duty to manage RedRush prudently and made false statements to induce Plaintiff to

invest in RedRush.  Complaint (Doc. 1) ("Compl.") ¶¶ 43-55.[1]

        Currently pending before the Court are Defendant's motion for summary judgment on the

two remaining claims, Doc. 46, and Plaintiff's cross-motion for partial summary judgment on the

breach of fiduciary duty claim, Doc. 53.  For the following reasons, Defendant's motion is

GRANTED in part and DENIED in part, and Plaintiff's cross-motion for partial summary

judgment on the breach of fiduciary duty claim is GRANTED.

---

[1] Plaintiff also requested the Court to enter a judgment declaring that Plaintiff was entitled to inspect and copy specific RedRush business records under New York LLC Law § 1102(b) and was entitled to reimbursement of legal fees associated with the pursuit of these records.  *Id.*  As a result of discovery, Plaintiff does not dispute that his request for those documents, and hence this cause of action, is now moot.  *See* Plaintiff's Counterstatement of Facts in Response to Defendant's Rule 56.1 Statement (Doc. 51) ("Pl.'s Rule 56.1 Cntrstmt.") ¶ 14.  Because the parties agree that the claim is now moot, the Court has no subject matter jurisdiction to grant declaratory relief.  *See Christopher P. by Norma P. v. Marcus*, 915 F.2d 794, 802 (2d Cir. 1990).

## I.   BACKGROUND

### A.  Factual Background[2]

From June 2012 to September 2012, Plaintiff, a French national, interned for RedRush, an "event planning and venue promotions management company."  Plaintiff's Local Rule 56.1 Statement of Material Facts (Doc. 54) ("Pl.'s 56.1 Statement") ¶1; Compl. ¶¶ 13-14.  During Plaintiff's internship, RedRush had no other employees and Plaintiff was personally supervised by Defendant, the sole owner and manager of the company.  Compl. ¶ 17.  RedRush did not have its own office and was instead located on the premises of Insticator, a Delaware corporation also formed and operated by Defendant, which produces an online advertising platform.  *Id.* ¶¶ 15, 18.  Upon the completion of his internship in September 2012, Plaintiff returned to France because his visa was due to expire.  *Id.* ¶ 19.

Approximately one year later, on August 27, 2013, Plaintiff emailed Defendant to express an interest in pursuing a career in the United States and inquired about the possibility of buying shares of either RedRush or Insticator.  Declaration of Thomas Vandenabeele (Doc. 56) ("Vandenabeele Decl.") Ex. A ("Email Chain").  Plaintiff also asked Defendant about possible employment and stated that he would be willing to pay for the requisite United States visa.  *Id.* On August 28, 2013, Defendant responded that he would agree to let Plaintiff purchase shares of RedRush and make Plaintiff his business partner in RedRush.  *Id.*  In the same email, Defendant provided Plaintiff figures showing RedRush's revenues declining from approximately $294,000 in 2011 to $176,000 in 2012.  *Id.*  Defendant explained that the reason for the decline in revenue at RedRush was because he was spending the majority of his time running his other company, Insticator.  *Id.*

---

[2] The following facts are undisputed except where otherwise noted.

On August 30, 2013, Defendant informed Plaintiff via email: "Ideally I would like to have you purchase 49% of [RedRush] for $148,000 and be my partner." *Id.* Plaintiff then asked Defendant via email on September 3, 2013 what the specifics of his employment with RedRush would be if Plaintiff purchased 20% of the company. *Id.* On September 4, 2013, Defendant responded in an email:

> You would be Vice President of RedRush. You would be in charge of promotions and company growth. I would introduce you to lots of the different venues and you would come with me to meetings and learn how to operate sponsored events. As well as meet owners of different venues. You would promote and manage different promoters. I would teach you how to negotiate the deals and execute. As well as how to reach out to liquor companies for sponsorships and other entertainment value add for the company. You would use my contacts in the industry and database.

*Id.*

On November 30, 2013, the parties signed a Unit Purchase Agreement (the "Purchase Agreement"), under which Plaintiff agreed to purchase from Defendant 50% of the common units of RedRush for $150,000, "represent[ing] 50% of the equity ownership of the Company." Declaration of James M. Branden (Doc. 48) ("Branden Decl.") Ex. D ("Purchase Agreement"); Pl.'s 56.1 Statement" ¶ 2. Pursuant to the Purchase Agreement, Plaintiff as "Buyer" was purchasing the common units directly from Defendant as "Seller." Purchase Agreement at 1. Even though Plaintiff acquired a 50% interest in RedRush as a result of his investment, Defendant remained the sole manager of RedRush and retained full control of the company. Pl.'s 56.1 Statement ¶ 4. According to the Purchase Agreement, Plaintiff acquired from Defendant common units in RedRush "solely for [Plaintiff's] own account for investment purposes only." Purchase Agreement ¶ 5. The Purchase Agreement also contained a "buyer put right" clause which provided that until April 30, 2014, Plaintiff could request the return of his $150,000 payment if his United States visa application was rejected:

Buyer Put Right. In the event that on or before April 30,[th] 2014 Buyer is unable to get a Visa approved in the United States, Buyer may put all Common Units held by Buyer back to the Seller at the price paid for such Common Units; provided that Buyer shall pay all of Seller's costs and expenses in connection with the exercise of this put right.  For the avoidance of doubt, this put right shall expire after April 30,[th] 2014 regardless of Visa status.  Following notice of the exercise of this put right, Buyer and Seller shall use their commercially reasonable best efforts to complete the transaction within five (5) business days.

*Id.* ¶ 2.

That same day, the parties also signed a document entitled "Amended and Restated Limited Liability Company Agreement of RedRush Entertainment LLC."  Branden Decl. Ex. C ("LLC Agreement").  The LLC Agreement provided that "each Manager shall owe, and shall act in a manner consistent with, fiduciary duties to the Company and its Members of the nature, and to the same extent, as those owed by directors of a New York limited liability company." *Id.* ¶ 5.1(c).  The LLC Agreement further stated that Defendant was RedRush's sole manager. *Id.* ¶ 5.1(a).  Plaintiff and Defendant both signed the Agreement as the LLC's only two members. *Id.* at 14.  Both the Purchase Agreement and the LLC Agreement contained a merger clause indicating that the respective agreement constituted the entire agreement between the parties. Purchase Agreement ¶ 11; LLC Agreement ¶ 10.4.

Finally, on December 4, 2013, the parties signed a Promoter Agreement providing Plaintiff, as a promoter for RedRush, with an annual compensation equal to either (a) 50% of the company's net profits if such net profits equal or are greater than $125,000 or (b) 100% of the company's net profits if such net profits are less than $125,000.  Branden Decl. Ex. E ("Promoter Agreement") ¶ 2.  Plaintiff was represented by counsel during his negotiations regarding these contracts.  Branden Decl. Ex. H (J. Estrada Dep. Tr.) at 33:16-21.

In compliance with the Purchase Agreement, Plaintiff transferred $150,000 to RedRush's Bank of America account (the "Account") on January 29, 2014.  Pl.'s 56.1 Statement ¶ 3;

4

Branden Decl. Ex. F.  This Account was in the name of "RedRush Entertainment LLC" and was the only bank account associated with RedRush.  Branden Decl. Ex. G (Z. Dugow Dep. Tr.) at 157:14-158:18; Vandenabeele Decl. Ex. I ("RedRush Bank Statements").  The money was wired to the RedRush Account—as opposed to Defendant's personal account, who was the "Seller" pursuant to the Purchase Agreement—because Plaintiff's immigration attorney specifically requested the money be deposited in the Account.  *See* Z. Dugow Dep. Tr. at 46:6-48:5; J. Estrada Dep. Tr. at 66:2-13.

Prior to the wire transfer, the beginning balance in the Account for the the statement period beginning January 1, 2014 was $28.94.  RedRush Bank Statements at 1.  Approximately two months after Plaintiff's deposit, on April 1, 2014, as a result of numerous withdrawals, the balance on the Account was $4,328, and by April 30, 2014, the balance had further decreased to $17.  Pl.'s 56.1 Statement ¶ 15; RedRush Bank Statements at 17.  Many of these withdrawals were transfers to Defendant's personal bank account or the Insticator business account, including a $100,000 transfer to Defendant's personal account, and transfers as large as $10,000 to Insticator's account.  *See generally* Z. Dugow Dep. Tr. at 177-180, 200, 228, 231.

On February 3, 2014, four days after Plaintiff transferred the $150,000 to the Account, an E-2 Treaty Investor Visa Application was filed on behalf of Plaintiff by RedRush Entertainment as the "petitioner," or sponsor of the visa application.   Vandenabeele Decl. Ex. D ("Visa Application").  The E-2 visa allows a foreign investor to be admitted to the United States when investing a "substantial amount of capital" in a "bona fide enterprise" in the United States.  U.S. DEP'T OF HOMELAND SEC.: E-2 TREATY INVESTORS, https://www.uscis.gov/working-united-states/temporary-workers/e-2-treaty-investors.  To obtain an E-2 visa, the applicant must also show at least 50% ownership of the business through a managerial or similar position.  *See id.*

The application noted that Plaintiff made a substantial investment in purchasing 50% of equity ownership in RedRush and that he would assume a managerial role with the company.  *See* Visa Application.[3]  Defendant signed the visa application, *see id*. at 4, but it was Plaintiff's attorney who drafted the document.  Z. Dugow Dep. Tr. at 57:4-16.[4]  Plaintiff acknowledges that Defendant was cooperative and supportive of Plaintiff's efforts to obtain a visa.  J. Estrada Dep. Tr. at 79:23-80:9.

Plaintiff's visa application was rejected in March 2014.  Compl. ¶ 38; J. Estrada Dep. Tr. at 85; Z. Dugow Dep. Tr. at 106.  When Plaintiff notified Defendant of the denial, Defendant offered to assist Plaintiff prepare for his visa interview the next time he applied.  J. Estrada Dep. Tr. at 91:19-94:8.  In the weeks following the visa rejection, they spoke about the application process repeatedly and Defendant continued to express his support for Plaintiff's efforts to obtain a visa.  *See id.* at 83-84; 90-94.

Plaintiff does not dispute that he did not avail himself of the "buyer put right" provision in the Purchase Agreement, which entitled him to demand the return of his investment by April 30, 2014.  *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and in Support of Cross Motion for Summary Judgment (Doc. 57) ("Pl.'s Mem. L.") at 21.  Instead, Plaintiff applied for a visa a second time, but was again denied in July 2014.  Compl. ¶ 38; J. Estrada Dep. Tr. at 120; Z. Dugow Dep. Tr. at 106.  On July 24, 2014,

---

[3] Although Plaintiff initially expressed his desire to purchase 20% or 25% of RedRush shares, he met with a lawyer regarding the investment, *see* Vandenabeele Decl. Ex. A, and ultimately purchased 50% of the common units.  *See* Purchase Agreement.  Although neither party so states, presumably Plaintiff purchased a larger stake to meet the 50% ownership and "substantial amount of capital" requirements for the visa application.

[4] Defendant testified that the E-2 visa application appeared to contain a number of "inaccuracies" regarding RedRush, *see* Dugow Dep. Tr. at 54:8-57:16, seemingly aimed at enhancing the possibility that a visa would issue. For example, the application refers to the purchase of RedRush shares as an "initial investment" in the company as opposed to a private purchase.  *Id.*  Additionally, Defendant indicated that the statement in the visa application that RedRush "needed an important injection of capital in order to be able to hire full-time professional and supervisory personnel" was not an accurate statement.  *Id.* at 59-60.

after his second visa application was rejected, and nearly three months past the expiration of the "buyer put right" provision, Plaintiff wrote to Defendant to demand the return of his $150,000. J. Estrada Dep. Tr. at 120.  Plaintiff concluded his request by saying "thank you for supporting me…and for believing in me."  *Id.* at 119-120.  Defendant responded the same day that he was sorry to hear about Plaintiff's visa rejection, but that Plaintiff's right to request the return of his $150,000 had expired three months before.  *Id.* at 122.

In an attempt to recover Plaintiff's investment, Plaintiff's attorney wrote to both Defendant and RedRush multiple times, including on January 28, 2015, and February 13, 2015. Vandenabeele Decl. Ex. G ("1/28/2015 Letter"); Vandenabeele Decl. Ex. H ("2/13/2015 Letter").  These letters sought an accounting of Plaintiff's invested funds and specifically requested that Plaintiff be permitted to inspect RedRush's records as required under New York LLC Law § 1102.  *See* 1/28/2015 Letter; 2/13/2015 Letter.  Plaintiff's attorney told Defendant that Plaintiff had "a statutory right to inspect and copy the records of the company" and requested Defendant "advise where and when the…records will be available for inspection and copying."  1/28/2015 Letter; 2/13/2015 Letter.  Specifically, Plaintiff's counsel requested to inspect RedRush's tax returns and reports, financial statements, bank statements, and contracts for the years 2013 and 2014. 1/28/2015 Letter.  Defendant never provided any financial information in response to Plaintiff's requests, nor advised Plaintiff of a date and time he or his attorney could inspect the books and records of the Company.  Declaration of James Estrada (Doc. 63) ("Estrada Decl.") ¶¶ 3-6, 13.  Plaintiff ultimately received RedRush's records during the course of discovery in this litigation.  Pl.'s Mem. L. at 24.

### B. Procedural Background

Plaintiff filed the instant action on April 23, 2015 alleging five claims.  *See* Compl.  On July 24, 2015, Defendant filed a motion to dismiss the Complaint.  Doc. 16.  On March 31, 2016, the Court dismissed two of the five claims (fraudulent conveyance and unjust enrichment) without prejudice pursuant to Rule 12(b)(6), Doc. 35 (the "March 2016 Order"), and a third claim is now moot, *see* fn. 1 *supra*.  In dismissing the two claims, the Court held, *inter alia*, that Plaintiff purchased the RedRush common units from Defendant personally, as opposed to providing a capital contribution to RedRush, and that the funds therefore belonged to Defendant to use as he saw fit.  *Id.* at 15.

Two claims now remain:  (1) that Defendant breached the fiduciary duties he owed to Plaintiff by, *inter alia*, diverting all of the funds Plaintiff deposited in the RedRush account for his own benefit, failing to manage the business affairs of RedRush, and failing to provide Plaintiff with RedRush business records; and (2) that Defendant fraudulently made false statements, with the intention that the statements would induce Plaintiff to invest money in RedRush.  *See* Compl. ¶¶ 43–55.  Defendant moves for summary judgment on the remaining counts, and Plaintiff cross-moves for summary judgment on the breach of fiduciary duty claim.

## II.   LEGAL STANDARD GOVERNING MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Warshawsky*, 559 F.3d at 137.  The party moving for summary judgment is first responsible for demonstrating the absence

of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

When confronted with cross-motions for summary judgment, the Court analyzes each motion separately, "in each case construing the evidence in the light most favorable to the non-moving party." *Peterson v. Kolodin*, No. 13 Civ. 793 (JSR), 2013 WL 5226114, at *1 (S.D.N.Y. Sept. 10, 2013) (quoting *Novella v. Westchester Cty.*, 661 F.3d 128, 139 (2d Cir. 2011)); *see also Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) ("[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against

the party whose motion is under consideration.") (citation omitted).  The Court is not required to resolve the case on summary judgment merely because all parties move for summary judgment. *Morales*, 249 F.3d at 121.

## III.   BREACH OF FUDICIARY DUTY CLAIM

Under New York law, "[t]he elements of a cause of action to recover damages for breach of fiduciary duty are (1) the existence of a fiduciary relationship, (2) misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Rut v. Young Adult Inst., Inc.,* 901 N.Y.S.2d 715, 717 (N.Y. App. Div. 2010).

The Parties cross-move with respect to this claim.  The Court addresses each party's arguments regarding the elements of a breach of fiduciary duty claim in turn.

### A.   Existence of a Fiduciary Relationship

New York Limited Liability Company Law imposes a statutory fiduciary duty on managers of limited liability companies:

> A manager shall perform his or her duties as a manager, including his or her duties as a member of any class of managers, in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances.

N.Y. Limit. Liab. Co. § 409.

While it is true that LLC members are permitted to disclaim some of the most fundamental fiduciary obligations through disclaimers in operating agreements, *see, e.g., Kagan v. HMC–New York, Inc.,* 939 N.Y.S.2d 384 (1st Dept. 2012), the LLC Agreement here explicitly provides "that each Manager shall owe, and shall act in a manner consistent with, fiduciary duties to the Company and its Members of the nature, and to the same extent, as those owed by directors of a New York limited liability company."  LLC Agreement ¶ 5.1(c).  Furthermore, the parties signed the LLC Agreement as the LLC's only two members, and the Agreement

identifies Defendant as RedRush's sole manager.  *Id.*  ¶ 5.1(a).  Thus, the parties expressly agreed that Defendant, as the LLC's sole manager, owed a fiduciary duty to Plaintiff, as a member of RedRush.

Defendant does not contest that he had a fiduciary duty to Plaintiff as the sole manager of RedRush.  Based on the Parties' express contractual agreement, the Court finds as a matter of law that Defendant, acting as the sole manager of RedRush, owed a fiduciary duty to Plaintiff.

### B.       Misconduct by the Defendant

The duty on a manager imposed by New York Limited Liability Company Law § 409 "is the same fiduciary standard applied to corporate directors."  *In re Die Fliedermaus LLC*, 323 B.R. 101, 110 (Bankr. S.D.N.Y. 2005) (citing 16 *N.Y. Jur. Business Relationships* § 2107). Plaintiff alleges Defendant breached his duties to the company in at least six different ways. Compl. ¶ 46; Pl.'s Mem. L. at 12-13.  These allegations broadly fall into three categories:  (1) self-dealing related to the RedRush Account; (2) failure to provide access to RedRush's books and records; and (3) failure to properly manage RedRush.[5]  The Court addresses each of these alleged breaches in turn.

### 1.  Misuse of the Corporate Bank Account

A managing member of an LLC owes a "duty of undivided and undiluted loyalty." *Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466 (N.Y. 1989) (internal quotations and citation omitted).  One way a breach of fiduciary duty occurs is when a manager self-deals, or takes action for his own personal benefit.  *Pokoik v. Pokoik*, 982 N.Y.S.2d 67 (1st Dept. 2014) (self-dealing constitutes breach where a fiduciary partner depleted capital accounts of the business);

---

[5] Although Plaintiff also summarily alleges Defendant breached his fiduciary duty by failing to provide Plaintiff with the necessary tax information for Plaintiff to file a tax declaration in the United States for purposes of obtaining a visa, Plaintiff provides no support for this allegation.

*Schneidman v. Tollman*, 593 N.Y.S.2d 23 (1st Dept. 1993) (fiduciary partners who created a new entity, excluding former partners, in order to engage in the same business as the prior entity were properly found to be in breach); *Coastal Sheet Metal Corp. v. Vassallo,* 904 N.Y.S.2d 62 (1st Dept. 2010) (fiduciary officer of a corporation breached his duty to the corporation by transferring assets to a new entity he created).

Plaintiff claims Defendant breached his fiduciary duty by using the funds in the RedRush business Account for his own benefit and the benefit of his other company, Insticator, and failing to inform Plaintiff about transfers from the Account.  Pl.'s Mem. L. at 12-13.[6]  Defendant counters that he was entitled to use the money in the Account as he saw fit, because it belonged to him.  Memorandum of Law in Support of Zackary Dugow's Motion for Summary Judgment (Doc. 49) ("Def.'s Mem. L.") at 15-16.  The money in the Account falls into two categories:  (1) the $150,000 Plaintiff transferred for the sale of Defendant's common units in RedRush; and (2) additional funds from various other sources totaling $15,005.15.  *See* Declaration of Zackary Dugow (Doc. 58) ("Dugow Decl.") ¶¶ 2-3.

First, Plaintiff contends that Defendant misused the $150,000 Plaintiff transferred for the sale of the RedRush common units.  Pl.'s Mem. L. at 14-17.  However, the Court has already

---

[6] It is not disputed that Defendant repeatedly transferred funds from the Account to his personal bank account and the Insticator account.  For instance, the bank records and Defendant's own deposition testimony confirm that Defendant:

- Transferred $100,000 from RedRush Entertainment to Defendant's personal Fidelity Account.  Z. Dugow Dep. Tr. at 177:13-23.
- Transferred $2,000 from RedRush Entertainment to Insticator, Inc.  *Id.* at 178:7-179:12.
- Transferred $500 from RedRush Entertainment to Insticator, Inc.  *Id.* at 179:24-180:10.
- Transferred $10,000 from RedRush Entertainment to Insticator Inc.  *Id.* at 180:11-24.
- Transferred $2000 from RedRush Entertainment to Insticator Inc. as a personal investment.  *Id.* at 200:8-20.
- Transferred $2,450 from RedRush Entertainment to Insticator Inc. as an investment of Defendant's "personal funds."  *Id.* at 228:5-25.

Defendant also freely admitted to using the Account to write a $440 check to his girlfriend, but could not remember for what purpose he wrote the check.  *Id.* at 192:3-193:16.

ruled on this precise issue in the March 2016 Order. Doc. 35. As discussed therein, the Purchase Agreement explicitly states that Plaintiff purchased 50% of the common units of RedRush from *Defendant. See* Purchase Agreement ¶ 5; *see also* Doc. 35 at 15-16. Plaintiff and Defendant are the only parties to the Purchase Agreement, which refers to Defendant as "the Seller" and Plaintiff as "the Buyer," and provides that "[b]uyer shall pay seller $150,000 for 500,000 Common Units of the Company currently held by Seller." Purchase Agreement ¶ 5. Thus, although the money was wired to the RedRush Account at the specific request of the Plaintiff, the contract clearly indicates that it was a private sale of equity owned by Defendant; the contract in no way suggests that the purchase was a capital contribution to RedRush. Consequently, the funds belonged to the Defendant. *See* Doc. 35 at 15-16.

As to the balance, while all of the sources of the remaining $15,005.15 are not entirely clear, Defendant concedes that at least some of the money in the account belonged to RedRush. *See* Reply Memorandum of Law in Support of Zackary Dugow's Motion for Summary Judgment (Doc. 59) ("Def's Rep. Mem. L.") at 2 ("Whatever monies traveled through the RedRush account represented Estrada's purchase of the common units, personal brokerage account proceeds or *miscellaneous RedRush funds previously earned* (i.e., before January 29, 2014, when Estrada bought in)") (emphasis added).[7] This is sufficient to establish a breach. To be sure,

---

[7] While Defendant argues that these RedRush funds were earned "before Estrada bought in" and therefore his, *see* Dugow Decl. ¶¶ 2, 11, the mere fact that the company earned the funds before Plaintiff purchased his common units does not affect the Court's analysis here. RedRush, not the Defendant, owned the assets in which Plaintiff had a 50% interest, regardless of when those assets were earned. *See, e.g., In re HSM Kennewick, L.P.*, 347 B.R. 569, 571–72 (Bankr. N.D. Tex. 2006) ("Fundamental principles of corporate law hold that … [an] LCC and its members are separate legal entities, and that the … LLC owns the assets, not the stockholders or members.").

Plaintiff also asserts that summary judgment is proper because Defendant breached his fiduciary duties by co-mingling his personal funds with RedRush assets. Pl.'s Mem. L. at 15-16. The Court notes that while Defendant's co-mingling of corporate and personal funds is improper, the co-mingling did not necessarily cause the Plaintiff's damages. In addition, the co-mingling related to the $150,000 was done at the specific request of Plaintiff's attorney. Plaintiff cannot therefore be heard to complain of an alleged breach in connection with co-mingling those funds.

given the total of the miscellaneous funds that flowed through the Account after Plaintiff's purchase, those pertaining to RedRush are likely to be relatively low, but self-dealing even as to these funds would still constitute misconduct.[8]

### 2. Failure to Provide Access to Books and Records

Plaintiff further argues Defendant breached his duties by failing to provide RedRush's bank records to Plaintiff.  Memorandum of Law in Further Support of James Estrada's Cross Motion for Summary Judgment (Doc. 64) ("Pl.'s Reply Mem. L.") at 4.[9]

New York Limited Liability Company Law § 1102(b) permits members of a limited liability company access to the books and records of the company.  A manager's failure to provide access to books and records where an applicable state statute allows inspection can constitute a breach of fiduciary duty.  *See Curley v. Brignoli Curley & Roberts Associates*, 746 F. Supp. 1208, 1214 (S.D.N.Y. 1989), *aff'd and remanded on separate grounds*, 915 F.2d 81 (2d Cir. 1990) (finding breach of fiduciary and statutory duties where Delaware law provided for inspection of records).  Here, Plaintiff's attorney specifically requested Defendant to "advise where and when the aforementioned records will be available for inspection and copying." 1/28/2015 Letter at 2; *see also* 2/13/2015 Letter at 1 ("I reiterate our demand that you let us know where and when the records listed in my January 28, 2015 letter are currently

---

[8] Although Defendant attempts to establish that none of the money that passed through the Account after the Purchase Agreement were RedRush assets, his efforts are inadequate.  For example, Defendant asserts that $4,350.73 of the funds came from small deposits over the course of many months.  Dugow Decl. ¶ 4.  These included deposits from Amazon.com, Venmo payments, ATM deposits, a safebox deposit rental refund, and bank refunds.  *Id.*; *see also* RedRush Bank Statements.  But Defendant has not proffered an accounting that establishes that these deposits were not related to RedRush's business affairs.  Instead, Defendant generally avers that "RedRush clients were businesses or individuals who wanted to throw an evening party" and every party "costs thousands, not hundreds of dollars."  Dugow Decl. ¶ 3.  This explanation, however, does not disprove RedRush's entitlement to the funds.

[9] Although Plaintiff agrees his request for declaratory judgment for the *production* of RedRush records is now moot because Plaintiff received the records through discovery in this litigation, *see* Pl.'s Rule 56.1 Cntrstmt ¶ 14, Plaintiff still maintains that Defendant's failure to provide the books and records when requested in 2015 was a breach of Defendant's fiduciary duty.  *See* Pl.'s Reply Mem. L. at 4.

available…").  Under New York LLC Law § 1102, Defendant was required to comply with the request, but made no response to Plaintiff's attorney.

Defendant does not appear to contest that he did not provide the records or indicate when the records could be inspected, but counters that he "did not expressly refuse" Plaintiff's "entry to the business premises."  Memorandum of Law in Opposition to James Estrada's Motion for Summary Judgment ("Def.'s Mem. L. Opp.") at 3.  This is not enough.  It is difficult to imagine, moreover, what more Plaintiff could have done beyond making multiple clear demands to inspect the records, particularly since RedRush did not have its own offices.  Therefore, Defendant breached his fiduciary and statutory duty by refusing Plaintiff or his attorney access to the books and records of the company.

### 3.  Failure to Prudently Manage RedRush

"A corporate officer's fiduciary duty includes discharging corporate responsibilities 'in good faith and with conscientious fairness, morality and honesty in purpose' and displaying 'good and prudent management of the corporation.'" *Gully v. Nat'l Credit Union Admin. Bd.,* 341 F.3d 155, 165 (2d Cir. 2003) (quoting *Alpert v. 28 Williams St. Corp.,* 63 N.Y.2d 557, 569, (N.Y. 1984)).  New York Limited Liability Company Law also imposes a statutory duty on a manager to perform his duties as a manager "in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances."  N.Y. Limit. Liab. Co. § 409.

Plaintiff asserts Defendant breached his fiduciary duty by "essentially abandoning RedRush" and failing to carry out his duties as a manager acting in good faith.  Pl's Mem. L. at 13-14.  Defendant argues that their Agreement depended on Plaintiff obtaining a visa and

moving to the United States, and that he did not fail to manage RedRush because "there were no business affairs" as a result of Plaintiff's failure to obtain a visa.  Def.'s. Mem. L. at 16.[10]

Plaintiff has failed to meet his burden to show that a reasonable finder of fact could determine that Defendant breached his duty to prudently manage RedRush.  Plaintiff does not point to any specific affirmative act or failure to act relating to Defendant's general management responsibilities that constitutes a breach of his duties.  Nothing in the record suggests that Defendant represented he would keep RedRush active.  Indeed, Defendant explicitly told the Plaintiff that he was concentrating his efforts on Insticator, to the detriment of RedRush.  *See* Vandenabeele Decl. Ex. A.  Nor does the record suggest that Defendant would be incapable of fulfilling his promises to Plaintiff if he were able to obtain a visa.  As Defendant suggests, the company is essentially a personal services business that can be activated at any time.

\*     \*     \*

For the reasons set forth above, the Court finds that Defendant breached his fiduciary duty to Plaintiff by self-dealing and failing to provide Plaintiff with access to the company's books and records.

### C.  Damages

A Plaintiff must establish that the alleged breach of fiduciary duty was both a "but for" and proximate cause of his damages.  *See, e.g., Nordwind v. Rowland*, 584 F.3d 420, 433 (2d Cir. 2009).  Plaintiff claims two distinct categories of damages:  (1) the $150,000 Plaintiff paid for RedRush common units; and (2) damages arising from any money Defendant improperly took from the Account that belonged to RedRush.  Pl.'s Rule 56.1 Cntrstmt. at 5-6.

---

[10] At his deposition when questioned about his managerial duties at RedRush, Defendant stated:  "I would define my duties [as manager of RedRush] simply having the taxes filed for the business that's not running, roughly, to the best of my knowledge."  Z. Dugow Dep. Tr. at 32:20-23.  When asked whether he, as sole manager of RedRush, had duties to Plaintiff, Defendant responded that he was uncertain as to the exact duties he owed.  *Id.* at 38:5-15.

As discussed above, the $150,000 belonged to the Defendant and was not a capital contribution to RedRush.  Therefore, Plaintiff could not have suffered damages as a result of Defendant's use of those funds.  However, Defendant concedes that certain of the balance of the funds in the Account, however small, belonged to RedRush, *see* Def's Rep. Mem. L. at 2, and there appears to be no dispute that Defendant used those funds for himself.  As such, Plaintiff has sufficiently demonstrated that Defendant caused some modicum of damage as a result of his self-dealing.  Additionally, because Defendant breached his duties by failing to allow Plaintiff to inspect the books and records under New York Limited Liability Company Law § 1102(b), Plaintiff suffered damages at least in the form of the cost incurred to compel Defendant to do what the law required.

Defendant breached his fiduciary duty to Plaintiff, and Plaintiff has suffered damages as a result.  Accordingly, Defendant's motion for summary judgment is denied with respect to the breach of fiduciary duty claim, and Plaintiff's cross-motion for summary judgment on the claim is granted.

## IV.   FRAUDULENT MISREPRESENTATION CLAIM

Under New York law, the elements of a claim for fraudulent misrepresentation are:  (1) defendant knowingly made a misrepresentation of a material fact; (2) with the intent to deceive another party and induce that party to act on it; (3) plaintiff reasonably relied upon the representation; and (4) as a result of such reliance, plaintiff suffered damage.  *Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001) (quoting *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13, 19 (2d Cir. 1996)); *see also GoSmile, Inc. v. Levine*, 915 N.Y.S.2d 521 (1st Dept. 2010).  New York law is well settled that a party may not establish fraudulent intent solely from the non-performance of the future event, but the defrauded party

must also "allege specific facts showing that the promisor intended not to honor his obligations at the time the promise was made." *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 225 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009) (internal citations omitted). Either an affirmative misrepresentation or the omission of a material fact can form the basis of a fraudulent misrepresentation claim. *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y. 2d 413, 421 (N.Y.1996). Where a claim is for fraud by omission, the plaintiff must prove additionally that the Defendant had a duty to disclose the concealed fact. *Laugh Factory, Inc. v. Basciano*, 608 F. Supp. 2d 549, 559 (S.D.N.Y. 2009).

At summary judgment as well as at trial, a plaintiff must prove each element of a fraud claim by "clear and convincing" evidence. *Hilton Hotels Corp.,* 528 F. Supp. 2d at 219. "Clear and convincing evidence is evidence that makes the fact to be proved 'highly probable.'" *Abernathy-Thomas Eng'g Co. v. Pall Corp.*, 103 F. Supp. 2d 582, 595-596 (E.D.N.Y. 2000) (quoting *1A New York Pattern Jury Instructions-Civil* § 1:64 (3d ed. 1999)). This clear and convincing evidence of fraud may be circumstantial or inferred, even on summary judgment. *United States v. Letscher,* 83 F. Supp. 2d 367, 373 (S.D.N.Y. 1999).

Defendant argues that the Court should dismiss Plaintiff's fraud claim, which alleges that, through a series of misrepresentations and non-disclosures, Defendant induced Plaintiff to invest "the largest possible sum of money in RedRush." Compl. ¶¶ 49-50. In moving for summary judgment, Defendant argues there is no evidence of: (1) a material misrepresentation of fact; (2) an intent to deceive; or (3) proximate cause of Plaintiff's damages. Def.'s Mem. L. at 22-23.

With respect to the first element of this cause of action, Plaintiff has provided documentary evidence that Defendant wrote him, among other things, that Plaintiff would work as Vice President of RedRush, be in charge of promotions, benefit from Defendant's knowledge

and professional connections, and introduce Plaintiff to owners of different venues.  *See*

Vandenabeele Decl. Ex. A.  Plaintiff also contends (but provides no documentary evidence) that

Defendant told Plaintiff "that his investment into RedRush would permit him to hire full-time

key employees, who would increase the client portfolio through successful event planning,

financial and marketing strategies."  Pl.'s Mem. L. at 6.[11]  As Defendant correctly notes,

"something hoped for or expected to occur in the future … cannot be a basis for fraud."  Def.'s.

Mem. L. at 19; *see also id.* at 18.  Defendant further argues his statements were dependent on

Plaintiff's return to the United States.  *Id.* at 19-20.  That is, Defendant asserts that he fully

intended to abide by the representations he made to Plaintiff, but was prevented from doing so

because of Plaintiff's failure to obtain a visa.  *Id.*

It is black letter law that a representation of a person's "own intention to do or not to do a

particular thing is fraudulent if he does not have that intention."  Restatement (Second) of Torts §

530(1); *see also Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) ("it is settled that, if

a promise was actually made with a preconceived and undisclosed intention of not performing it,

it constitutes a misrepresentation of material existing fact") (quoting *Sabo v. Delman,* 3 N.Y.2d

155, 160 (N.Y. 1957)).  A promise to perform future acts is "not ground for a fraud action unless

there existed an intent not to perform at the time the promise was made."  *Cohen v. Koenig,* 25

F.3d 1168, 1172 (2d Cir. 1994); *see also Hilton Hotels Corp.,* 528 F. Supp. 2d at 221.  Intent to

deceive must be shown by evidence of "guilty knowledge or willful ignorance."  *Schwartz v.*

---

[11] In support of this contention regarding hiring employees, Plaintiff cites only to the Complaint, and has cited no evidence of this alleged promise or the details surrounding it.  *See id.*  The only evidence proffered in the record related to this alleged promise is Plaintiff's E-2 Visa application that was drafted by Plaintiff's counsel and signed by Defendant on behalf of RedRush.  The application indicates that "thanks to the foreign investment and according to the financial projections…[RedRush] will be able to hire several key managerial and professional employees" and that RedRush "needed an important injection of capital in order to be able to hire full-time professional and supervisory personnel."  Visa Application at 2.

*Newsweek, Inc.,* 653 F. Supp. 384, 390 (S.D.N.Y. 1986).  Fraudulent intent is rarely susceptible

to direct proof and must ordinarily be established by "circumstantial evidence and the legitimate

inference arising therefrom."  *Goshen Litho, Inc. v. Kohls*, 582 F. Supp. 1561, 1564 (S.D.N.Y.

1983).

      Plaintiff has failed to meet his burden by clear and convincing evidence – either direct or

circumstantial, concrete or inferred – that Defendant made promises regarding Plaintiff's

responsibilities and benefits at the company that he did not intend to perform.  The Court

concludes that drawing all inferences in the Plaintiff's favor, a reasonable fact finder still could

not hold for Plaintiff.  There is not a sufficient basis in the record to conclude that Defendant did

not intend to honor his promises at the time he made them, especially in light of the fact that his

promises were of necessity contingent on Plaintiff actually being present in the United States.

The very reason for the "buyer put right" clause in the Purchase Agreement was to account for

the contingency that Plaintiff's visa application might be rejected.  Purchase Agreement ¶ 2.

And it is undisputed that Plaintiff failed to invoke the provision before it expired, despite the fact

that the contingency had come to pass.  Furthermore, it is not disputed that it was Plaintiff that

initiated the discussions for this business opportunity and that Defendant affirmatively assisted

Plaintiff's efforts to obtain a visa.  For example, Defendant filed the application that Plaintiff's

counsel drafted and also discussed with Plaintiff how he could best prepare for the visa

interview.  *See* J. Estrada Dep. Tr. at 91:19-94:8.  The foregoing admits of no reasonable

inference that Defendant did not intend to follow through on his representations.

      Because there is not sufficient evidence in the record to allow a jury to infer that

Defendant made a material false statement with the requisite intent under New York law, the

Court need not analyze the remaining elements of the fraudulent misrepresentation claim.

Accordingly, the Court grants Defendant's motion for summary judgment on the fraudulent misrepresentation claim.

## V.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in part and DENIED in part and Plaintiff's cross-motion for partial summary judgment is GRANTED as follows:

- Defendant's motion for summary judgment as to the breach of fiduciary duty claim is DENIED.

- Defendant's motion for summary judgment as to the fraudulent misrepresentation claim is GRANTED.

- Plaintiff's cross-motion for partial summary judgment on the breach of fiduciary duty claim is GRANTED.

The parties are directed to appear for a status conference on **Thursday, December 15, 2016 at 10:30 a.m**.  The Clerk of the Court is respectfully directed to terminate the motions, Docs. 46 and 53.

It is SO ORDERED.

Dated:      November 30, 2016
            New York, New York

Edgardo Ramos, U.S.D.J.

21